UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOFPOOL LLC, a Limited
Liability Company,

        NO. CIV. S-10-3333 LKK/JFM

    Plaintiff,

  v.

KMART CORPORATION, a
Michigan Corporation, and
BIG LOTS, INC., an Ohio        O R D E R
Corporation,

    Defendants.
_____/

**I.   BACKGROUND**

According to the First Amended Complaint in this case, plaintiff Sofpool, LLC, is the assignee of all rights to Pierre R. Carreau's October 14, 2003 "design patent," No. US D480,817 S (the '817 claimed patent) for an above-ground pool.[1]  Sofpool alleges

---

[1] "Design" patents are granted pursuant to 35 U.S.C. § 171: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title. [¶]  The provisions of

1

that defendants infringed the patent by making and selling their own "Summer Escapes" pool.[2]  Dkt. No. 24.  In their Answers, defendants deny that they infringed the '**817** claimed patent.  Dkt. Nos. 27 (Kmart) & 29 (Big Lots).  Their Answers also included counterclaims asserting that the '**817** claimed patent is invalid under 35 U.S.C. §§ 102 ("novelty"), 103 ("non-obvious subject matter"), and 112 ("specification").

   Plaintiff moved for summary judgment on its infringement claim.  Defendants cross-moved for summary judgment that they have not infringed the patent, and that the patent itself is invalid because it was "obvious" in light of the "prior art."[3]

   The patent "claim" for the pool is very simple.  It reads, in its entirety:

> The design for an above-ground swimming pool, as shown and described [accompanied by several drawings].

---

this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."  In contrast, "utility" patents are granted pursuant to 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title").  See Int'l Seaway Trading Corp. V. Walgreens Corp., 589 F.3d 1233, 1238 (Fed. Cir. 2009) (comparing requirements for design versus utility patents).

   [2] Infringement of design patents is prohibited by 35 U.S.C. §§ 271 ("infringement of patent") and 289 ("additional remedy for infringement of design patent").

   [3] "A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).

2

Dkt. No 24 ("First Amended Complaint"), Exh. A.[4]  It was not clear to this court which part of the patent's drawings depicted elements of design, and which parts, if any, depicted purely functional elements.  This matters because a design patent "only protects the novel, ornamental features of the patented design."  OddzOn Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997).

On May 16, 2012, this court ordered plaintiff to file a supplemental memorandum distinguishing the "ornamental" elements of the patent from the "functional" elements.  After plaintiff did so, defendants noticed this claim construction ("Markman")[5] hearing, urging a competing claim construction.

**II.   STANDARDS - CLAIM CONSTRUCTION OF A DESIGN PATENT**

"[T]rial courts have a duty to conduct claim construction in design patent cases, as in utility patent cases."  Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc), cert. denied, 556 U.S. ___, 129 S. Ct. 1917 (2009).[6]

---

[4] Plaintiff's patent did not expressly limit the claim to the "ornamental" design.  However, by law, the design patent only covers the ornamental aspects of the design, so its omission of that language appears to make no difference.  See Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010) ("The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction.  By definition, the patented design is for a multi-function tool that has several functional components, and we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article").

[5] Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

[6] Citing Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).

"[T]he purpose of 'claim construction' is to resolve issues of infringement." <u>Typhoon Touch Technologies, Inc. v. Dell, Inc.</u>, 659 F.3d 1376, 1383 (Fed. Cir. 2011). Where, as here, a design patent is involved (as opposed to a utility patent), a principal goal of claim construction is to "factor out the functional aspects" of the patented design. <u>Richardson v. Stanley Works, Inc.</u>, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (internal quotation marks omitted). That is because the infringement inquiry in a design patent case focuses solely on the ornamental aspects of the patent, not its functional aspects. See <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1577 (Fed. Cir. 1995) ("A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent"); <u>OddzOn</u>, 122 F.3d at 1404-05 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent") (citations omitted).

In making a claim construction for a design patent, the district court does not "attempt to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." <u>Egyptian Goddess</u>, 543 F.3d at 679. That is because, as a rule, "'the illustration in the drawing views is its own best description.'" <u>Crocs, Inc. v. ITC</u>, 598 F.3d 1294, 1303 (Fed. Cir. 2010).[7] The court's claim construction must therefore "be adapted to a pictorial setting," since design patents are

---

[7] <u>Quoting</u> Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006).

4

"typically claimed as shown in drawings." Crocs, 598 F.3d at 1302. Moreover, "a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" Egyptian Goddess, 543 F.3d at 679, quoting Dobson v. Dornan, 118 U.S. 10, 14 (1886).[8]

Another goal of claim construction is simply for the court to help the fact-finder by, for example, pointing out "either for a jury or in the case of a bench trial by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art." Egyptian Goddess, 543 F.3d at 680. The court can also describe "the role of particular conventions in design patent drafting, such as the role of broken lines," and "assessing and describing the effect of any representations that may have been made in the course of the prosecution history." Id.

## III. PROPOSED CLAIM CONSTRUCTIONS

### A.  Plaintiff.

Plaintiff asks the court to use the following claim construction:

    1.  an overall effect of an above-ground oval pool with smooth sides having angles and bulges;

    2.  another overall effect of the **'817** design is the prominent top tube having a round cross section wherein the top tube follows the oval pool shape along the top of the pool, while overlapping the sides and joining with the top of the sides; and

---

[8] Nevertheless, "the level of detail to be used in describing the claimed design is a matter within the court's discretion." Egyptian Goddess, 543 F.3d at 679.

5

      3.   a further overall effect of generally U-shaped side struts joining beneath the top tub and being cast at an angle and retained at their bottoms by straps which extend horizontally a distance from the bottom of the pool sidewall.

**B.   Defendants.**

Defendants ask the court to use the following claim construction:[9]

      1.   trapezoidal shaped struts that angle outwards as the eye moves up, which include a base of a smaller length than the top of the strut, and said struts having sharp corners where vertical bars intersect with horizontal bars;

      2.   struts that are nearly parallel to the angles of the side wall at approximately 16 degrees, and that touch the side wall of the pool at the top and near the bottom;

      3.   four straps connecting the struts to the pool body that primarily project underneath the pool body, whose visibility is limited, as virtually no open space is seen between the strap and the pool or the strut, and which only extend a partial distance under the pool;

      4.   walls that include a top ring and bottom portion that are the same overall size from the top and bottom views, with walls that are concave and bulbous;

      5.   segmented and/or uplifted portions on the lower part of the rounded or curved panels that are without struts;

      6.   straight side panels with struts that do not uplift from the ground;

      7.   one strut per panel assembly;

      8.   elongated sides each consisting of eight curved panels and two straight panels, with said curved panels being of varying sizes: a small one next to the straight panel, two larger

---

[9] Defendants also ask the court to exclude from any claim construction the mere <u>existence</u> of (as opposed to the design of): (1) struts on the straight side walls of the pool; (2) outwardly angled or bulged curved or rounded end walls; (3) a round inflatable top collar; (4) straps connecting the struts to the body of the pool; (5) seams between the panels of the pool; and (6) an elongated shape. <u>See</u> Defendant's Motion (Dkt. No. 65-1) at p.17 (ECF p.20).

ones next to it, and a half panel visible from the side view; and

      9.   seams that form a starburst oval pattern when viewed from above, with said seams projecting a considerable distance underneath the floor of the pool when viewed from the end, side, or perspective views.

**C. Functional vs. Ornamental Elements.**

For some reason, both sides have submitted purely verbal claim constructions, with no reference to the patent drawings. Neither side explains why it has done so. Since a design patent is involved here, it seems clear that the most helpful claim construction is going to make reference to the drawings in the patent. The Federal Circuit has warned of "the dangers of reliance on a detailed verbal claim construction." <u>Crocs</u>, 598 F.3d at 1303.

Defendants' proposed claim construction seems to be exactly the detailed verbal description the Federal Circuit has warned courts not to engage in. Plaintiff's proposal, meanwhile, appears to be too broad, at least when divorced from the drawings (to which it makes no reference).

Each element depicted in the drawings has (or could have) a function, while it also has an ornamental aspect. Thus, regardless of whether these elements have a function or not, the following elements depicted in the drawings also have ornamental features: the tubular top; side-struts; side-straps; angled and bulging side-walls; rounded, angled and bulging end walls; and segmented panel walls of varying widths, connected by seams and creating a pattern as seen from above.

As best the court can tell, the only element depicted in the

7

1 drawings that has only an ornamental element is the oval shape of
2 the pool. Neither side has asserted that the oval shape is
3 necessary to carry out any function of the pool.

4 **IV.  ANALYSIS**

5     **A.  Scope of the Claim.**

6     In construing this patent, this court follows the cue of
7 <u>OddzOn Products</u>, a case carefully and well described by defendants'
8 counsel at oral argument.

> In construing the claim of OddzOn's patent, the district
> court carefully noted the ornamental features that
> produced the overall "rocket-like" appearance of the
> design. We agree with the district court's claim
> construction, which properly limits the scope of the
> patent to its <u>overall ornamental visual impression</u>,
> rather than to the broader general design concept of a
> rocket-like tossing ball.

14 <u>OddzOn</u>, 122 F.3d at 1405 (emphasis added). In <u>OddzOn</u>, the claimed
15 design patent and the accused design both involved a ball shaped
16 like a football with a protruding straight tailshaft and fins
17 arranged around the tailshaft.

18     It was undisputed in that case that the tail and fins were
19 functional in that they enabled the ball, when embodied in foam, to
20 travel farther and with greater stability than a traditional foam
21 football. <u>Id.</u>, 122 F.3d at 1406. The tail and fins were the only
22 elements that distinguished the ball from a traditional football,
23 yet they did not invalidate the design patent. Rather, they
24 "merely limit[ed] the scope of the protected subject matter." <u>Id.</u>
25 The district court properly limited the scope by construing the
26 ball in such a way as to capture "the overall ornamental quality of

8

1  the design." Id.  Specifically, the district court identified the
2  design elements of the tailshaft and the fins: the tailshaft was
3  "slender" and "straight;" the fins were "symmetrically arranged
4  around the tailshaft;" the fins each had "a gentle curve up and
5  outward;" the fins "flare[d] outwardly along the entire length of
6  the tailshaft;" and so on.
7      Thus, the district court correctly construed the claimed
8  design patent by describing the ornamental aspects of these
9  functional elements of the design, as a way of capturing the
10 overall visual impression of the ball.
11     In this case, both sides agree that only the ornamental
12 aspects of the elements depicted in the **'817** patent should be
13 included in claim construction, regardless of whether any given
14 element of the pool also has a function or does not.  For example,
15 even assuming the struts are functional,[10] they can be designed in
16 a U-shape, a trapezoidal shape, they can splay out from the pool or
17 stand vertically, they can touch the bulging side-wall of the pool
18 or not, and so forth.  Similarly, the tubular top can be
19 cylindrical or oblong,[11] large or small, and so on.
20 ////
21

---

22     [10] According to defendants, the struts hold up the sides of
23 the oval pool.

24     [11] According to defendants, the tubular top is necessary for
   the pool to be "self-rising" when water is poured into it, and to
   prevent water from splashing over the side.  Moreover, they assert
25 that it must be cylindrical in order to work, but they have offered
   no evidence of this, nor any logical explanation for why an oblong
26 tube would not work.

9

1    **B.   Drawing Conventions.**

2    The parties agree on the drawing conventions used in the
3 patent drawings – hatched lines, seams, and the like. To assist
4 the jury in understanding the meaning of these conventions, both
5 parties' descriptions will be included in the claim construction.

6 **V.   CONCLUSION**

7    **A.   Claim Construction.**

8    The court thus believes that the most helpful claim
9 construction will describe generally the claimed design with
10 reference to the patent drawings, while clarifying that only the
11 ornamental aspects of the elements depicted there are included in
12 the claim. Accordingly, the court issues the following **CLAIM**
13 **CONSTRUCTION**:

14    The claimed design is an above-ground, oval-shaped pool
       with side-struts, and additional elements or features, as
15     shown in the **'817** patent drawings. Whatever functional
       role may be played by any element or feature of the pool
16     depicted in the drawings is not a part of the claim, and
       should therefore be disregarded; but the design of those
17     same elements or features is a part of the claim. The
       elements or features referred to include, but are not
18     limited to the following as depicted in the drawings: the
       tubular top; side-struts; side-straps; angled and bulging
19     side-walls; rounded, angled and bulging end walls; and
       segmented panel walls of varying widths, connected by
20     seams, and creating a pattern as seen from above.

21    **B.   Drawing Conventions.**

22    The **'817** patent contains drawings which employ certain
23 conventions – hatched lines, shading and the like – which are not
24 necessarily self-explanatory. Each side has offered un-opposed
25 explanations of those conventions. Accordingly, the claim
26 construction includes, and hereby incorporates by reference:

Section II(b) of Dkt. No. 64 ("Technical Aspects of the Drawings/Surface Shading);[12] and Section IV of Dkt. No. 65-1 ("Drafting Conventions").[13]

**C.  Further Proceedings.**

The parties' cross-motions for summary judgment were filed without the benefit of this claim construction. Those motions (Dkt. Nos. 48 & 54), are therefore **DENIED** without prejudice.

The parties are instructed that any motion or cross-motion for summary judgment they wish to file shall be filed no later than 30 days from the date of this order.[14]

IT IS SO ORDERED.

DATED:  August 28, 2012.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[12] Plaintiff's Supplemental Memorandum.

[13] Defendants' Memorandum of Points and Authorities in Support of their <u>Markman</u> Claim Construction Hearing.

[14] So long as one side's motion is filed within 30 days, the other side's cross-motion, if any, may be filed thereafter in accordance with the local rules.

11