UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOFPOOL LLC, a Limited
Liability Company,

                      NO. CIV. S-10-3333 LKK/JFM

      Plaintiff,

  v.

KMART CORPORATION, a
Michigan Corporation, and
BIG LOTS, INC., an Ohio              O R D E R
Corporation,

      Defendants.
_____/

I.   **BACKGROUND**

In its First Amended Complaint, plaintiff Sofpool, LLC, alleges that defendants Kmart Corp. and Big Lot Stores, Inc., infringed its design patent for an oval, above-ground swimming pool, U.S. Patent No. D480,817 S (the '817 claimed patent), by selling their own "Summer Escapes" pool. Plaintiff has now moved for summary judgment on the infringement claim. Defendants have cross-moved for summary judgment, asserting that they have not

1

infringed the patent, and that in any event, the patent itself is invalid because it was "obvious" in light of the prior art. See 35 U.S.C. § 103 ("non-obvious subject matter").[1]

For the reasons that follow, the court finds that the accused pool does not infringe the '817 claimed patent. Accordingly summary judgment will be granted to defendants.

**1. STANDARDS**

    **a. Infringement.**

A design patent is infringed if "the patented design, or any colorable imitation thereof," is applied to "any article of manufacture for the purpose of sale." 35 U.S.C. § 289. Thus, "a design patent is infringed by the 'unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof.'" Arminak and Associates, Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007), cert. denied, 553 U.S. 1102 (2008), quoting Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998).[2]

---

[1] "A patent for a claimed invention may not be obtained ... if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. "Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. § 103." Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1384-85 (Fed. Cir. 2009).

[2] The statute's use of the term "colorable imitation" recognizes that "minor changes in a design are often readily made without changing its overall appearance." Goodyear, 162 F.3d at 1117.

2

Of course, the claimed design does not cover the universe of designs that remotely resemble it. Rather, as an initial matter, a design patentee limits the scope of his patent by including ornamental features that give the overall design a distinctive ornamental appearance. See <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (patentee included in its drawings certain features that gave the design "a distinct ornamental appearance," and "thus effectively limited the scope of its patent claim by including those features in it"). Thus, the initial step in any comparison of designs is a determination of whether the accused design is even within the limitation on scope that the patentee has imposed, through his patent drawings.

If the patentee's limitations on his patent do not plainly exclude the accused design, however, the infringement inquiry then requires the fact-finder to compare the whole of the claimed design "to the design of the accused device." <u>OddzOn Products, Inc. V. Just Toys, Inc.</u>, 122 F.3d 1396, 1404 (Fed. Cir. 1997). The comparison "requires the fact-finder to determine whether the patented design as a whole is <u>substantially similar</u> in appearance" to the accused design. <u>Id.</u>, at 1405 (emphasis added).

In making this comparison, the fact-finder puts itself into the place of an "ordinary observer." <u>Egyptian Goddess, Inc. V. Swisa, Inc.</u>, 543 F.3d 665, 687 (Fed. Cir. 2008) (<u>en banc</u>), <u>cert. denied</u>, 556 U.S. ___, 129 S. Ct. 1917 (2009). The "ordinary observer" is not an expert; he is an observer "of ordinary acuteness, bringing to the examination of the article upon which

3

1 the design has been placed that degree of observation which men of
2 ordinary intelligence give." <u>Gorham Mfg. Co. V. White</u>, 81 U.S. 511,
3 528 (1871); <u>Arminak</u>, 501 F.3d at 1324 (the "ordinary observer" is
4 the purchaser of the item displaying the claimed design). However,
5 he must not be too ordinary; rather he must be "familiar with the
6 prior art designs." <u>Richardson v. Stanley Works, Inc.</u>, 597 F.3d
7 1288, 1295 (Fed. Cir. 2010).

The designs are "substantially similar" if, viewing the overall appearance of the designs, an "ordinary observer"

> would be deceived by the similarity between the claimed and accused bowls, "inducing him to purchase one supposing it to be the other."

<u>Egyptian Goddess</u>, 543 F.3d at 683, <u>quoting</u> <u>Gorham</u>, 81 U.S. at 528;[3] <u>OddzOn Products</u>, 122 F.3d at 1405 ("There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar"); <u>Richardson</u>, 597 F.3d at 1295 ("ordinary observer" test).[4]

---

[3] <u>Egyptian Goddess</u> is the key authority in determining infringement of a design patent. It appears to be the last <u>en banc</u> decision of the Federal Circuit on the topic, and discusses the pertinent issues at length.

[4] Before the decision in <u>Egyptian Goddess</u>, the courts used the "point of novelty" test, in addition to the "ordinary observer" test. Under the "point of novelty" test, "'no matter how similar two items look, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art."'" <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 498 F.3d 1354, 1357 (Fed. Cir. 2007), <u>overruled</u>, 543 F.3d 665 (2008) (<u>en banc</u>). In other words, the court first identified a "point of novelty" that distinguished the claimed design from the prior art. If that "point of novelty" was not present in the accused design, then there could be no infringement.

The <u>en banc</u> court in <u>Egyptian Goddess</u> expressly did away with

1     Since the ordinary observer is familiar with the prior art,
2 the fact-finder will be called upon to consider the prior art in
3 any comparison between designs:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by Gorham. In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art, as in many of the cases discussed above and in the case at bar. Where there are many examples of similar prior art designs ... differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.

13 Egyptian Goddess, 543 F.3d at 678.

14     **B.   Invalidity – "Obviousness."**

15     A patent is presumed to be valid.  35 U.S.C. § 282(a); Aero
16 Products Intern., Inc. v. Intex Recreation Corp., 466 F.3d 1000,
17 1015 (Fed. Cir. 2006). Defendants, who assert that the '817 patent
18 is invalid for obviousness, bear the burden of proving its
19 invalidity. Id.; Creative Compounds, LLC v. Starmark Laboratories,
20 651 F.3d 1303, 1310 (Fed. Cir. 2011). The standard of proof
21 defendants must meet is "clear and convincing evidence." Microsoft

---

the "point of novelty" test. Egyptian Goddess, 543 F.3d at 678 ("we hold that the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement"); Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1363 (Fed. Cir. 2013) ("infringement of a design patent is based on the design as a whole, not on any 'points of novelty'").

5

1  Corp. v. i4i Ltd. Partnership, 564 U.S. ___, 131 S. Ct. 2238, 2242
2  (2011).
3       The Federal Circuit recently addressed how a party would go
4  about challenging a design patent on obviousness grounds:

> In addressing a claim of obviousness in a design patent, "the ultimate inquiry ... is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." Titan Tire, 566 F.3d at 1375, quoting Durling v. Spectrum Furniture Co., 101 F.3d 100, 103 (Fed. Cir. 1996). To determine whether "one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design," id. at 1381, the finder of fact must employ a two-step process. First, "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" Durling, 101 F.3d at 103, quoting In re Rosen, 673 F.2d 388, 391 (CCPA 1982). Second, "other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design." Id. However, the "secondary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" Id., quoting In re Borden, 90 F.3d 1570, 1575 (Fed. Cir. 1996).

Apple, Inc. v. Samsung Electronics Co., Ltd., 678 F.3d 1314, 1329-30 (Fed. Cir. 2012); see also Crocs, Inc. v. ITC, 598 F.3d 1294, 1308 (Fed. Cir. 2010) ("Obviousness is a question of law based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness").

**C.   Summary Judgment.**

Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); <u>Walls v. Central Contra Costa Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." <u>Ortiz v. Jordan</u>, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), <u>quoting</u> Fed. R. Civ. P. 56(a); <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936 (9th Cir. 2011) (<u>en banc</u>) (same), <u>cert. denied</u>, 132 S. Ct. 1566 (2012).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed." Fed. R. Civ. P. 56(c)(1); <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation)</u>, 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact"), <u>citing</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the

existence of a genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986); <u>Oracle Corp.</u>, 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial"). In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1)(A).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>, 653 F.3d at 966. Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. See <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

**2.   ANALYSIS**

    **a.   Infringement.**

Plaintiff's claimed design is U.S. Design Patent No. D480,817

("the '817 patent"), for an oval-shaped, above-ground swimming pool. The claim reads as follows, in its entirety: "The design for an above-ground swimming pool, as shown and described." Dkt. No 24, Exh. A.[5] The pertinent description consists of drawings. The court has construed the patent as follows:

> The claimed design is an above-ground, oval-shaped pool with side-struts, and additional elements or features, as shown in the '817 patent drawings. Whatever functional role may be played by any element or feature of the pool depicted in the drawings is not a part of the claim, and should therefore be disregarded; but the design of those same elements or features is a part of the claim. The elements or features referred to include, but are not limited to the following as depicted in the drawings: the tubular top; side-struts; side-straps; angled and bulging side-walls; rounded, angled and bulging end walls; and segmented panel walls of varying widths, connected by seams, and creating a pattern as seen from above.

ECF No. 73 (claim construction). The patent drawings are attached to this Order as Exhibit A.

As discussed above, the court's initial step is to determine whether the accused design is even within the limitation on scope that the patentee has imposed, through his patent drawings. At first glance, the accused design appears to be within the scope limitation of the claimed design. The claimed and accused designs, are both for an oval, above-ground pool. Plaintiff's Statement of

---

[5] Plaintiff did not expressly limit the claim to the "ornamental" design. However, by law, the design patent only covers the ornamental aspects of the design, so its omission of that language appears to make no difference. See Richardson, 597 F.3d at 1293 ("The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction. By definition, the patented design is for a multi-function tool that has several functional components, and we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article").

9

Undisputed Facts ("PSUF") ¶ 5;[6] Defendant's Statement of Undisputed Facts ("DSUF") ¶ 19.[7]  Both designs feature a tubular top. Defendants' Statement of Undisputed Facts ("DSUP") (ECF No. 81-1) ¶¶ 33-34.  Both designs feature side struts along their long sides, stretching from just below the tubular top, to the ground. Id., ¶¶ 21-22.  Both designs feature side straps that run underneath the pool and connect the struts where the struts meet the ground. Id., ¶¶ 47-48.  Both designs have angled side walls with a curve or bulge at the bottom, just before the structure meets the ground. Id., ¶¶ 35-36.  Both designs contain segmented side walls.[8]  Id., ¶¶ 49-50.

However, one ornamental aspect of a design patent is the proportions of the design.  See Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188 (Fed. Cir. 1988) ("the district court correctly viewed the design aspects of the accused devices: the wooden balls, their polished finish and appearance, <u>the proportions</u>, the carving on the handle, and all other ornamental characteristics") (emphasis added).  The '817 patent claims a pool design that is approximately seven (7) times longer than it is tall, in its 2-strut design.  See Complaint, Exh. A.  Accordingly, the patent claims a design for a squat pool.  Indeed, the overall appearance of the claimed design

---

[6] ECF No. 82-1.

[7] ECF No. 81-1.

[8] The segments of the claimed design form a specific pattern when viewed from above.  The photographs of the accused design do not make clear whether a similar pattern exists or not.

10

is of a squat, wading-type pool.

The accused pool, on the other hand, has a taller and more elegant appearance. <u>See</u> Plaintiff's Motion for Summary Judgment ("PSJ") (ECF No. 77) at 35, Photographs B & E. It does not give the appearance of being squat. Indeed, the accused design is less than four (4) times longer (taking the length of the tubular top) than it is tall, approximately, in its 2-strut design. While both designs may give the impression of being wading pools, the claimed design gives the appearance of being a squat wading pool, even possibly permitting a person or child to sit in it, whereas the accused pool appears to be too tall for sitting.[9]

A design patent cannot, of course, claim every conceivable shape and proportion that could arise from its basic design. But that would appear to be the point of permitting design patents in the first place. The patent protects the shape and proportion the patentee chooses, but leaves other shapes and proportions to the imagination of other designers.

The court must keep in mind that the ultimate goal of the design patent is to prevent the "unauthorized manufacture, use, or sale of the article <u>embodying</u> the patented design or any colorable

---

[9] The comparison is somewhat awkward because the court is comparing the black-and-white drawings of the claimed design against the color photographs of the accused design. However, the court is instructed to use the claimed drawings, not the commercial embodiment of the claimed design. <u>See</u> <u>Sun Hill Industries, Inc. v. Easter Unlimited, Inc.</u>, 48 F.3d 1193, 1196 (Fed. Cir. 1995) ("'The test for infringement is not whether the accused product is substantially similar to the patentee's commercial embodiment of the claimed design'") (the "point of novelty" analysis of this case was overruled by <u>Egyptian Goddess</u>).

11

imitation thereof.  <u>See</u> 35 U.S.C. § 289 (emphasis added).  The court believes that no reasonable juror could find that an ordinary observer would conclude that the taller, more elegant accused pool "embod[ies]" the squat pool plaintiff patented, "or any colorable imitation thereof."[10]

**B.  Invalidity and Non-obviousness.**

Both defendants have moved for summary judgment on their counterclaims that they did not infringe the patent, and that the patent is invalid for obviousness.  The motions for summary judgment based upon non-infringement will be granted for the reasons stated above in Section III(A).

The motions for summary judgment based upon obviousness appear to be based upon the premise that "if the design of the '817 Patent is interpreted broadly enough to cover the Summer Escapes pool [the accused design], then it would have been obvious to one skilled in the art to combine earlier references to arrive at a single piece of art that is substantially the same as what is claimed in the '817 Patent."  Defendants' Motion for Summary Judgment ("DSJ") at 34.[11]  Since the court has determined that the design of the '817 does not cover the accused design, this motion would appear to be

---

[10] The court is aware that in a case alleging infringement of a design patent, "it is often helpful to refer to any prior art with which the ordinary observer would reasonably be familiar." <u>Revision Military, Inc. v. Balboa Mfg. Co.</u>, 700 F.3d 524, 527 (Fed. Cir. 2012).  Here, because the accused design is not within the scope of the claimed design, there is no need to engage in a discussion or analysis of the prior art.

[11] ECF No. 78-1.  The page numbering refers to the internal document page number, not the ECF page number.

12

moot.[12]

## IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiff's motion for summary judgment (ECF No. 77), is **DENIED**;

2. Defendants' motion for summary judgment (ECF No. 78), is **GRANTED** on the grounds of non-infringement, and their motion for summary judgment on the grounds of obviousness is **DENIED** as moot;

3. The Clerk is directed to enter judgment for defendant and to close this case.

IT IS SO ORDERED.

DATED: May 29, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[12] As plaintiff points out, a jury in another case specifically found that the '817 patent was not invalid for obviousness. See Sofpool v. Intex, Civ. No. 2:7-cv-97, ECF No. 148, Question No. 4 (E.D. Tex. April 17, 2008). However, that verdict was vacated by the Federal Circuit, although on grounds not apparently related to the non-obviousness finding. Sofpool, LLC v. Intex Recreation Corp., 328 Fed. Appx. 654, 654-655 (Fed. Cir. 2009) ("Because the jury in the present case was instructed based upon the point of novelty test eliminated by Egyptian Goddess, the judgment of the district court is vacated and the case is remanded for reconsideration and further proceedings as appropriate").